365 So.2d 1128 (1978)
Nancy N. STERN
v.
Frank B. WILLIAMS.
No. 9562.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
Rehearing Denied January 17, 1979.
Writ Refused March 5, 1979.
*1129 Monroe & Lemann, Thomas B. Lemann and Michael R. O'Keefe, III, New Orleans, for plaintiff-appellee.
Stone, Pigman, Walther, Wittmann & Hutchinson, Clinton W. Shinn, Stephen G. Bullock and Walter B. Stuart, IV, New Orleans, for defendant-appellant.
Before SAMUEL, LEMMON and GARRISON, JJ.
LEMMON, Judge.
This suit against Frank Williams by his former wife seeks to enforce the provisions of a separation and settlement agreement or to recover damages for its breach. At issue on appeal is the interpretation of certain contractual provisions regarding the divorced wife's temporary use of the former matrimonial domicile on Iona Street and the purchase by Williams of another residence for her.
At the time of the divorce in June, 1972 Mrs. Williams (now Mrs. Stern) and her minor children were living in the Iona residence. Furthermore, certain monetary obligations were due her by Williams, arising from separate funds she had advanced for the benefit of the community. Against this factual background the parties entered into the separation agreement shortly after the divorce, which contained the following provisions pertinent to this litigation:
"3. Husband agrees to the continued occupancy by Wife and children of the present residence at 519 Iona Street in Metairie through June 30,1979, subject to the conditions described in subsequent paragraphs. Husband will maintain all principal and interest payments, real estate taxes, and insurance coverage of house and contents on the present basis during the period of occupancy. The contents coverage and additional living expense coverage will be assigned in favor of Wife.
"4. Husband would undertake to provide an alternate residence at Wife's request on the following basis:
"A. Husband would purchase a residence for Wife for a price (including the purchase price and improvements) up to $100,000;

*1130 "B. Title and ownership to be vested immediately in Wife's name, since Husband would intend that the residence be owned by Wife.
"C. The amount of the purchase price shall be adjusted from June 30, 1972 to June 30, 1978 (or June 30 of any intervening year preceding the time at which Wife proposes to acquire a residence) directly proportionate to changes in the May, 1972 Consumer Price Index of the Bureau of Labor Statistics of the U. S. Department of Commerce based on 1967 equals 100.00, the parties intending that Wife shall receive a residence valued at $100,000 in terms of May, 1972 dollar purchasing power.
"D. The foregoing obligation shall survive Husband's death and constitute an obligation of his estate.

* * * * * *
"14. Husband recognizes the following claims of Wife for separate funds of Wife:

"A. Separate funds expended for
maintenance of household required
to be reimbursed to Wife under Louisiana
law ................................... $40,565.21
"Value of separate funds donated by
Mrs. Delphine C. Williams to Husband
and Wife for payment of life
insurance premiums (less value of
insurance coverage) on policies
owned by Husband ...................... $55,593.52

"Husband's agreement in Paragraph 4 shall satisfy these obligations. Wife relinquishes all other claims of any nature or kind against Husband, except claims arising under this Separation and Property Agreement. * * *"
In March, 1976 Mrs. Stern remarried and moved into a residence owned by her present husband. She thereafter made demand upon Williams to purchase a house for her in accordance with Paragraph 4 of the separation agreement. When he declined, she filed this suit. The trial court rendered judgment requiring Williams to purchase a residence of the value stipulated in the agreement or, in default thereof, to pay her the sum of $96,158.73, the amount she had advanced for the benefit of the community.
Arguing on appeal that the contract must be viewed in its entirety, Williams contends Paragraph 3's provision for Mrs. Stern's use of the Iona residence "subject to the conditions described in subsequent paragraphs" must be read with Paragraph 4's obligation for him "to provide an alternate residence at wife's request". He reasons that the paragraphs, taken together, constitute a conditional obligation to purchase an alternate residence and that no obligation arises until his former wife has need for a place in which to live or intends to actually live in the alternate residence she is demanding.
Courts are required to give effect to contracts according to the true intent of the parties, which intent is determined by the words of the contract, when the words are clear and lead to no absurd consequences. C.C. art. 1954. Under the clear wording of this contract, considered in its entirety, Williams has undertaken an unconditional obligation in Paragraph 4 to satisfy his former wife's claims for separate funds by purchasing a residence for her upon her request. The conditional obligation is contained in Paragraph 3, which obliges him to allow her continued occupancy of the Iona residence until she requests the purchase of an alternate residence (or until the expiration of the specified term). The phrase "alternate residence" in Paragraph 4 can only be construed reasonably in connection with the condition in Paragraph 3, so that Williams' conditional obligation to allow continued occupancy of the Iona residence ceases upon fulfillment of his unconditional obligation to purchase another residence to be owned by his former wife.
Furthermore, it would lead to an absurd consequence if the agreement were interpreted so as to mean Mrs. Stern intended to forfeit her claim in excess of $96,000.00 if she subsequently decided to live in a home other than the Iona residence or the one her husband was obliged to provide under Paragraph 4.
*1131 Williams further argues that in Paragraph 14 he merely recognized the wife's claims and did not recognize the validity of the claims. He then reasons that since the agreement, if breached, was merely a compromise of those claims, the "(b)reach of a compromise does not make the original claim of the other party exigible", but only returns the obligation to the status of a claim.
Compromise is a contract. C.C. art. 3071. One does not evade the obligations of a contract of compromise by breaching it. The contract of compromise in this case gave rise to an obligation to do, and breach of an obligation to do entitles the obligee to damages or to specific performance, if the case permits this option. C.C. art. 1926.
The trial court properly ordered Williams to perform his unconditional obligation or to pay damages if he failed to do so by the date specified in the judgment. The court also properly measured the damages according to C.C. art. 1934 as the loss the creditor has sustained, being the amount of her separate funds, with interest from the date the funds were advanced.
The judgment is affirmed, except that the deadline for specific performance is extended to the date which is six months from the day this judgment becomes final and definitive.
AFFIRMED.

ON APPLICATION FOR REHEARING
On application for rehearing Williams argues that he obliged himself only to "provide her with a comfortable home in which to live for the rest of her life".
A reading of the entire contract belies this argument. Williams' obligation in paragraph 4 "to provide an alternate residence" is explained by subparagraph B's requirement that ownership must be vested immediately in the former wife, indicating the intent of the parties that Williams' obligation was to purchase a residential building for Mrs. Stern for any purpose she chose to use it as owner, and was not simply to provide her with a place in which to live.
The application is denied.
APPLICATION DENIED.