563 So.2d 533 (1990)
Harry Craig CABRAL
v.
NATIONAL FIRE INSURANCE COMPANY, Continental Casualty Company and Jack Gene Hansen.
No. 90-CA-72.
Court of Appeal of Louisiana, Fifth Circuit.
June 6, 1990.
Rehearing Denied July 17, 1990.
*534 John I. Hulse, IV., Craig R. Nelson, Michael E. Wanek, John A. Stewart, Jr., Regel L. Bisso, Randall L. Kleinman, Hulse, Nelson & Wanek, New Orleans, William W. Hall, Hall, Lentini, Mouledoux & Wimberly, Metairie, for defendants/appellants, Nat. Fire Ins. Co. and Continental Cas. Co.
Leonard J. Cline, Joseph H. McCusker, III, Metairie, for plaintiff/appellee, Harry Craig Cabral.
Before CHEHARDY, BOWES and GAUDIN, JJ.
BOWES, Judge.
National Fire Insurance Company (hereinafter "National") and Continental Casualty Company (hereinafter "Continental") appeal a judgment of the 24th Judicial District Court, taken by default, in favor of plaintiff/appellee, Harry Craig Cabral (hereinafter "Cabral") in the amount of $1,461,105.18, plus costs and interest, plus statutory penalties of 10%. Appellants are the uninsured or underinsured motorist insurance carriers of Cabral with combined policy limits of $1,250,000.00. For the following reasons, we annul and set aside the judgment and remand the case for further proceedings in accordance with this opinion.
On December 29, 1988, Cabral filed suit in the Twenty-fourth Judicial District Court against National, Continental, and Jack Gene Hansen. In the petition, Cabral alleged that he suffered injuries in an automobile accident near Dallas, Texas, on October 15, 1987, caused by the negligence of Hansen. Cabral had been a guest passenger in an automobile owned by Yvette Galliano, when Hansen allegedly collided into the rear end of the Galliano vehicle. Cabral further alleged that Hansen was insured for $100,000 and that such insurance was insufficient to cover his damages, which he estimated at $4,025,000.00. Therefore, the petition urged that National and Continental, Cabral's uninsured/underinsured carriers, were liable for the excess damages.
Counsel for National and Continental moved for and obtained an extension of time in which to plead, which expired on February 26, 1989. Counsel for Cabral and National's attorney differ in their accounts of a further informal extension of time. In any event, Cabral obtained a preliminary default on May 15, 1989, and confirmed the default on May 22, 1989. On May 30, 1989, present counsel for National was substituted as attorney of record and moved for a new trial. On July 26, 1989, the motion for new trial was heard and, on November 21, 1989, the trial court denied the motion. National and Continental now appeal from the judgment.
*535 On appeal, National and Continental have urged a number of errors which can be summed up into four major issues:
1. Plaintiff failed to establish a prima facie case as required by LSA-C.C.P. art. 1702;
2. Fraud and ill practices took place in obtaining the default judgment;
3. The damages were excessive and not supported by the evidence; and
4. The judgment is invalid because it is in excess of the policy limits.
Without reaching the other major issues, we find that Cabral did not satisfy the requirements of LSA-C.C.P. art. 1702 and establish a prima facie case entitling him to a default judgment against appellants. We do so on the basis of our finding that Cabral was obliged to introduce evidence establishing insurance, or the lack thereof, on the part of Ms. Galliano, and, specifically, do not pass on the merits of appellants' other contentions concerning the evidence or lack thereof at the default confirmation.
LSA-C.C.P. art. 1702 states in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
(2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
LSA-R.S. 22:1406(D)(6) states the evidentiary requirements in claims under uninsured motorist provisions of liability policies:
(6) In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy, the following evidence shall be admissible as prima facie proof that the owner and the operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question: (emphasis supplied)
. . . . .
(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, together with a sworn notarized affidavit by an official of the Casualty and Surety Division to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.
(d) The effect of the prima facie evidence referred to in (a), (b) and (c) above is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer.
Failure to follow these procedures set forth in the statute results in the burden of proof remaining with the plaintiff to prove such facts by other admissible evidence. Loupe v. Tillman, 367 So.2d 1289 (La.App. 4 Cir. 1979); Scherer v. Chaisson, 469 So.2d 510 (La.App. 3 Cir.1985).
LSA-R.S. 22:1406(D)(1)(c) provides in pertinent part:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply: (emphasis supplied)
(i) The uninsured motorist coverage on the vehicle in which the injured party *536 was an occupant is primary; (emphasis supplied)
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant. (emphasis supplied)
In the present case, at the default confirmation hearing, Ms. Galliano testified that she was a Texas resident at the time of the accident, and that she was the owner and operator of the vehicle in which Cabral was riding at the time of the accident. She also described the accident and her injuries for the court. She did not give any testimony whatsoever as to her insurance status or that of the vehicle she was driving. Absolutely no evidence was introduced relative to the insurance on Ms. Galliano's vehicle, if any.
The burden of proof in cases falling under the uninsured motorist statutes rests squarely on the plaintiff, while the statute itself designates methods by which a plaintiff may shift the burden of proof. Absent establishment of a prima facie case in accordance with LSA-R.S. 1406(D)(6), some other admissible evidence is necessary.
The evidence offered by Cabral on the insured status of the tortfeasor appears to be deficient, consisting of a pleading filed in the Texas litigation in which Cabral was an intervenor. Cabral avers that Hansen's policy is lost and therefore the only available information with reference to the policy limits is the pleading. He does not, however, inform us why the affidavits of R.S. 1406(D)(6)(c) could not be supplied. However, assuming arguendo that this pleading does constitute sufficient evidence as to Hansen's insured status, clearly the complete lack of evidence on the primary UM insurance (the Galliano vehicle) does not satisfy the burden of proof.
LSA-R.S. 11:1406(D)(1)(c), supra, provides the exception to the prohibition against stacking UM policies. Where a party is injured in a non-owned vehicle, he has available to him the "primary" coverage on the non-owned vehicle and one "excess" UM coverage. In the present case, the coverage on Ms. Galliano's vehicle is primary. By the terms of the statute itself, primary coverage must be exhausted before the injured plaintiff can recover against an excess insurer. See, e.g., Mohr v. State Farm Ins. Co., 528 So.2d 144 (La.1988); Grapusa v. U.S. Fidelity and Guar. Co., 483 So.2d 1146 (La.App. 5 Cir. 1986).
The court cannot determine whether or not the primary UM coverage has been exhausted so as to permit plaintiff to reach an excess carrier, absent competent evidence of the limits and viability of such primary coverage. Here, the trial court had no evidence as to any limits on any primary policy which Ms. Galliano or the Galliano vehicle may have had in effect at the time of the accident. Evidence which was admitted into evidence, a police report of the accident, indicates that Ms. Galliano was insured by "Guaranty Insurance Company." Hence, it was manifest error for the trial court to render judgment against the defendants for the entire amount of damages suffered by Cabral without first ascertaining the insured status of the Galliano vehicle.
Cabral contends that once he "established" that Hansen was underinsured, the burden of proof shifted to the defendants to show there were other applicable policies available and that proof of underlying coverages is a defense burden. We disagree. LSA-R.S. 22:1406(D)(1)(c) mandates the priorities of recovery, and, in doing so, ranks UM coverage on the non-owned vehicle in which the plaintiff was an occupant the first from which an injured party must recover before reaching to an "excess" insurer "should that primary uninsured motorist coverage be exhausted." The burden of proof in the present situation remains with the plaintiff until he proves by sufficient admissible evidence the status of both the tortfeasor and non-owned vehicle in which he was riding as being *537 uninsured or underinsured. Here, the insurance in question is primary, not "underlying" coverage, and is not a defense.
Cabral has suggested that in confirming a default a plaintiff is not obligated to disclose possible defenses which may be raised by his adversary, citing such cases as Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976); and Danel v. Knek, 490 So.2d 282 (La.App. 3 Cir.1986). However, what these cases actually say is that the fact that a defendant might have a defense to a plaintiff's demands, or that there exists a serious and bona fide dispute between the parties, is not sufficient reason to set aside an otherwise valid default judgment (unless the defendant has shown a good cause for his failure to appear). Plaintiff's perversion of this principle and his attempts to apply such "principle" to the facts of the present case simply does not persuade us that this default judgment, which was not obtained in strict conformity with all the requirements of law, can stand, merely because the defendant did not appear. In other words, he must still present a prima facie case on embracing all of the necessary elements of his claim against appellants, even if he is not obligated to present the defendant's case. He must prove entitlement to the damages he seeks from the defendant-appellants.
Here, the plaintiff failed to prove his entitlement to damages from these defendants when he failed to show that the primary uninsured or underinsured insurance on the "non-owned" Galliano vehicle, if any, was insufficient to satisfy his damages.
Cabral also claims that because the UM carrier is solidarily liable with the tortfeasor, the existence of other insurance is irrelevant because the injured motorist can demand performance of the entire obligation from any solidary obligor, citing Fertitta v. Allstate Ins. Co., 462 So.2d 159 (La.1985). While the defendant may be solidarily liable with the tortfeasor (the judgment herein was against the appellants, and did not include Hansen, but cast National and Continental "in solido"); nevertheless Cabral may not bypass the order of recovery mandated in the statuteto do so would render that section meaningless. However, Cabral may possibly be able to collect the entire judgment for damages, eventually, from appellants, if the primary insurer does not pay.
Finally, Cabral claims that under Texas law, the policy of Ms. Galliano was unavailable to him. Once again, no evidence of this was produced at the default hearing, and, further, the accuracy of this assertion is dubious. This is part and parcel of the failure of proof on this essential link in the entire chain of liability. In our opinion, Cabral failed to prove a prima facie case of his entitlement to damages from the appellant insurance companies.
For the foregoing reasons, the judgment in favor of Cabral and against National and Continental, dated May 22, 1989, is annulled and set aside. The judgment of November 21, 1989, denying a new trial to appellants is reversed, and the case is remanded to the district court for further proceedings and a new trial. Costs are assessed to appellee.
DEFAULT JUDGMENT ANNULLED, SET ASIDE AND REMANDED; JUDGMENT DENYING A NEW TRIAL REVERSED.
GAUDIN, Judge, concurring.
I concur in the reversal of the motion denying a new trial but for different reasons. There was admitted contact between attorneys prior to the time the default was entered; thus, considering general policy considerations weighing I would suggest heavily in defendants' favor, these defaulted parties should be given their day in court.
See The Louisiana State Bar Association v. White, 539 So.2d 1216 (La.1989) and Thibodeaux v. Burton, 538 So.2d 1001 (La. 1989).