571 So.2d 127 (1990)
Jeanne Y. LEE and W. Chapman Lee, Individually and as Administrator of the Estate of Jeanne Elise Lee
v.
USAA CASUALTY INSURANCE COMPANY OF AMERICA, CNA Insurance Companies, Rolfe R. Schroeder, Individually and as Administrator of the Estate of Andrew E. Schroeder and Country Corner Food Stores, Inc.
Nos. 90-CC-0433, 90-CC-0439.
Supreme Court of Louisiana.
December 3, 1990.
James P. Dore, Borron, Delahaye, Edwards & Dore, Plaquemine, for Jeanne Y. Lee and W. Chapman Lee, plaintiffs-applicants.
Frank A. Fertitta, Lane, Fertitta, Lane & Tullos, Baton Rouge, for Safeco Ins. Co. of America, defendant-respondent.
Raymon G. Jones, Jaime Crow Waters, Deutsch, Kerrigan & Stiles, New Orleans, for Continental Cas. Co., defendant-applicant.
MARCUS, Justice.
This case arises from an automobile accident which occurred on October 29, 1983 between Jeanne Elise Lee and Eric Schroeder. Schroeder was covered by a $100,000 liability policy issued by USAA. Dr. Lee, the owner of the 1981 Datsun which Jeanne Elise was driving at the time of the accident, had two insurance policies which provided uninsured motorist (UM) coverage both on the Datsun and on his Chevrolet van. The first policy, issued by Safeco, provided $250,000 UM insurance on both the Datsun and the Chevrolet van with a per occurrence limit of $500,000. The second policy was a personal umbrella excess policy issued by Continental Casualty Company (CNA) providing $1,000,000 UM insurance on both the Datsun and the Chevrolet van, with a per accident limit of $1,000,000. After a jury trial, the trial judge entered a judgment in favor of plaintiffs for $1,626,600. The court of appeal reduced the judgment *128 to $1,506,600 but otherwise affirmed. The court found that since Jeanne Elise was driving her father's vehicle at the time of the accident (a non-owned vehicle), she was able to stack UM coverages. As a result, the court held the insurers liable as follows:
1. USAA, as liability insurer of Schroeder, for its policy limits of $100,000;
2. Safeco, as "primary" UM insurer of the vehicle which Jeanne Elise was occupying at the time of the accident, for its UM policy limits of $250,000;
3. CNA, as statutory "primary" UM insurer of the vehicle in which Jeanne Elise was occupying at the time of the accident, for its aggregate limit of $1,000,000; and
4. Safeco, as "excess" UM insurer of the other vehicle (the van listed in the same policy) in which Jeanne Elise was not occupying at the time of the accident, for its UM limits of $250,000. (This puts Safeco's total liability at $500,000 for this accident).[1]
Schroeder's insurer (USAA) paid its policy limits of $100,000, leaving a balance of $1,406,600. Plaintiffs sought to collect $500,000 from Safeco and the balance ($906,600) from CNA. Safeco refused to pay the $500,000, arguing it was not obligated to pay the stacked $250,000 until CNA first paid its entire $1,000,000 policy limits. Under this scenario, Safeco would only be liable for a total of $406,600, rather than $500,000. Plaintiffs brought a rule to show cause, seeking to have Safeco's liability under the judgment determined. The trial judge found "Safeco's liability under said judgment is Safeco's policy limits, or the sum of $500,000, as ordered by the Court of Appeal, plus legal interest from date of judicial demand." Safeco applied to the court of appeal for a supervisory writ, which was granted in part. Referring to the previous holding, a different panel of the court stated:
[T]his court clearly stated the insurers were liable for the following amounts: (1) USAA Casualty Insurance Company of America was cast for the first $100,000; (2) Safeco, as a "primary" insurer, was cast for the next $250,000; (3) Continental Casualty Company, as "primary" insurer, was cast for the next $1,000,000; and (4) Safeco, as an "excess" insurer, (with a potential liability of $250,000) was cast for the balance of $156,600. The funds of the "primary" insurers must be exhausted before reaching the "excess" coverage provided by Safeco. Accordingly, the trial court's judgment of June 27, 1989, is amended to provide that Safeco shall be liable for payments to plaintiffs totaling $406,600 plus interest.
Separate applications were made to this court by plaintiffs and CNA. We granted certiorari and ordered the cases consolidated.[2]
The sole issue presented for our consideration is the ranking of the UM coverages.
In order to rank the coverages, we must consider the true nature of the underlying policies. Safeco's "Family Automobile Policy" covering Dr. Lee's Datsun and Chevrolet van is clearly a policy of primary insurance. The liability section of the policy obligates Safeco
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;
B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile....
By contrast, the CNA "personal umbrella excess policy" has all the characteristics of *129 a true excess policy.[3] The coverage provision of the policy specifically states "This policy provides extra liability insurance over and above what is covered by your basic policies." The conditions provision of the policy further states "When you have a loss which is covered by a basic policy, your basic policy(ies) provides coverage first, and then this policy adds to the basic policies." "Basic policy" is defined as a "policy or policies listed in the Declarations (including renewals or replacements) which provide liability coverage for injury or damage because of accidents." Safeco's policy is listed on the declarations page of the CNA policy, with limits of $250,000/$500,000. As between the UM policies, therefore, it is clear CNA's excess policy would be contractually obligated to pay only after Safeco's primary policy was exhausted. Nonetheless, Safeco argues this contractual relationship was changed by operation of the anti-stacking exception in La.R.S. 22:1406(D)(1)(c), which categorized a stacked policy as excess. An examination of the background of the statute shows this contention to be without merit.
Prior to 1977, an insured covered by two or more UM coverages could cumulate, or "stack" the benefits when his damages exceeded the mandatory minimum coverage. Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Graham v. American Casualty Co., 261 La. 85, 259 So.2d 22 (1972). In 1977, La.R.S. 22:1406(D)(1)(c) was amended to prohibit stacking. However, an exception to this general prohibition was created which allowed one policy to be stacked by an injured party occupying a non-owned automobile:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
Clearly, the intent behind La.R.S. 22:1406(D)(1)(c) was not to create a comprehensive policy ranking order, but simply to provide a framework within which two policies could be stacked. As a result, a policy which in all respects is contractually primary is deemed by a fiction of law to be statutorily "excess" for purposes of stacking. Such a label does not transform the policy into one of true excess insurance. Rather, the statutory excess policy is only "excess" in the sense that the primary insurance must be exhausted before the statutory excess insurance may be selected. There is no indication the statutory designation was intended to alter in any way the contractual relations between true primary and true excess insurers.[4] Simply put, the statute governs stacking only, and does not purport to deal with the overall ranking of insurance policies.
Further, we find no public policy reasons which would require a contractually excess insurer to be ranked ahead of a statutorily excess insurer. The intent of uninsured *130 motorist coverage is "to protect the insured at all times against the generalized risk of damages at the hands of the uninsured motorists, not to limit coverage to certain situations or to a certain degree of risk exposure to the uninsured motorists." Block v. Reliance Insurance Co., 433 So.2d 1040 (La.1983). Clearly, honoring the contractual primary/excess relationship between Safeco and CNA harmonizes with the intent of the statute. The occupant insured is given full protection. Safeco as the primary policy is not required to pay any more than it contracted to pay under its policy, and CNA's obligation to pay "over and above" what is covered by the primary policy is respected.
In sum, we find no compelling reason in either the background of the antistacking exception or in the public policy surrounding UM insurance to require a contractually excess insurer to pay ahead of a primary insurer which is deemed statutorily excess for purposes of stacking. The proper ranking of the coverages is (1) Safeco's primary coverage on the Datsun ($250,000); (2) Safeco's primary coverage (statutorily excess) on the Chevrolet van ($250,000); (3) CNA's umbrella excess policy (the balance of the judgment, $906,600). Accordingly, the trial court was correct in finding Safeco was liable up to its policy limits of $500,000, and the court of appeal erred in reversing this determination.[5]

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it held Safeco liable for the sum of $406,600 plus interest. The judgment of the trial court, finding Safeco's liability to be its policy limits of $500,000 plus legal interest from date of demand, is reinstated. All costs are assessed against Safeco.
NOTES
[1] Lee v. USAA Casualty Insurance Co., 540 So.2d 1083, 1090 (La.App. 1st Cir.1989), writ denied, 542 So.2d 514, 515 (La.1989), reconsideration denied, 544 So.2d 384, 385 (La.1989).
[2] 559 So.2d 1392 (La.1990).
[3] As the court noted in Coates v. Northlake Oil Co., 499 So.2d 252, 255 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987):

The whole theory of umbrella insurance is that the insured protects himself against catastrophic loss by the procurement of insurance coverage which takes up where his primary policy leaves off. Thus, umbrella coverage is to be regarded as true excess over and above any type of primary coverage.
[4] In Grapusa v. U.S. Fidelity and Guaranty Co., 483 So.2d 1146, 1149 (La.App. 5th Cir.1986), writ denied, 486 So.2d 735 (La.1986), the court reached a similar conclusion:

Simply because U.S.F. & G. has been statutorily delegated the status of an "excess" insurer, through use of "stacking," this does not mean U.S.F. & G. and Continental are equivalent excess insurers, regardless of whether Continental provides uninsured motorist coverage. U.S.F. & G., by its own terms, is primary. The Continental policy was issued conditioned upon the U.S.F. & G. policy being primary and exhausted first.
[5] In their application to this court, plaintiffs argued the court of appeal erred in failing to find Safeco liable jointly and in solido for the total amount of the judgment up to the maximum limits of its policy of $500,000, regardless of the ultimate ranking between Safeco and CNA. Obviously, since we find Safeco is liable for its policy limits of $500,000, we need not address this argument.