Slimane MAATKI

v.

Naomi F. MOORE, et al.

Civ. A. No. 90–2249.

United States District Court,
E.D. Louisiana.

March 27, 1991.

Charles M. Winters, New Orleans, La., for plaintiff.

Richard A. Deas, Joseph N. Naccari, Naccari, Deas & Pugh, Metairie, La., for Naomi F. Moore, Colonial Lloyd's Ins. Co., Gerard M. Victor, Hancock Ins. Co., Aetna Sur. Ins. Co.

Matthew J. Ungarino, Patrick Joseph Sanders, Metairie, La., for State Farm Ins. Co.

Steven Barth Witman, Duplass, Witman, Metairie, La., for Aetna Cas. & Sur. Co.

Russell Martin Cornelius, Robert Evan Thomas, Cornelius, Sartin & Murphy, New Orleans, La., for Fidelity & Cas. Ins. Co. of New York.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on Motion of defendant, Aetna Casualty & Surety Company ("Aetna") for Summary Judgment. The gravamen of Aetna's motion is that summary judgment is proper either because the policyholder validly rejected uninsured and underinsured ("UM") coverage altogether, and/or that a valid selection of lower UM limits was made, which lower UM limits Aetna has in fact paid,[1] plaintiff having acknowledged receipt thereof and released of all claims against Aetna, regarding plaintiff's April 20, 1988 accident.[2] Plaintiff filed no written opposition to Aetna's motion for summary judgment. Defendant, State Farm Insurance Company ("State Farm") formally opposed the motion. The matter originally set for hearing on March 27, 1991, was taken on briefs without oral argument.

## PROCEDURAL HISTORY

Plaintiff, Slimane Maatki ("Maatki"), filed a complaint for damages resulting from automobile accident that occurred on April 20, 1988 in the Civil District Court for the Parish of Orleans, Judge Connolly's Division. Maatki alleged the accident was caused by defendant, Naomi Moore ("Moore"), whose vehicle crashed into the rear of the vehicle driven by defendant, Gerard Victor ("Victor"), which in turn crashed into the rear of the vehicle driven by Maatki, and provided by his employer, Beihl International Corporation ("Beihl"). The mechanics of the accident are immate-

rial to Aetna's Motion for Summary Judgment.

The sole issues before this Court are the legal effect of a executed rejection of UM coverage dated May 28, 1986, and alternatively, the legal effect of signed, dated, written instrument acknowledging payment by Aetna in full, stipulating that same constitutes compromise and settlement, and releasing all of plaintiff's claims against Aetna and its named insured Beihl [Maatki's employer], together with a joint motion and order of dismissal to the same effect signed by Civil District Court Judge Connolly on May 4, 1990, a copy of which accompanied the record upon removal of this suit to this Court.

As a matter of fact, the record reflects that defendant, Aetna [Maatki's employer's primary UM carrier] paid its UM limits in the amount of $100,000 and that defendants, Colonial Lloyds [Moore's automobile liability carrier], and Hancock Insurance Company [Victor's automobile liability carrier] paid some or all of their respective policy limits in connection with this accident. Consequently, Moore, Colonial Lloyds, Gerard Victor, Hancock Insurance Company, and Aetna were dismissed from the Civil District Court action no. 89–4035 on joint motions and orders of dismissal submitted to the court by plaintiff and defendants.

The suit was subsequently removed to this Court by the only remaining defendant State Farm Insurance Co. ("State Farm"), Maatki's personal UM carrier.[3] By second supplemental and amending petition, plaintiff re-interjected Aetna into these proceedings, which insurer according to the record

---

1. See, Draft No. 283492734, Policy No. 61FJ775301 CCA, dated 3/2/90, date of loss 4/20/88, in the amount of $60,000.00 indicating full and final settlement of UM [Aetna's Exhibit "H"]; and Draft No. 283492734, Policy No. 61FJ777301 CCA, dated 9/7/89, date of loss 4/20/88, in the amount of $40,000.00 indicating UM [Aetna's Exhibit "G"].

2. See, "Receipt and Release", executed on March 9, 1990 by Maatki and his attorney in the presence of two witnesses [Aetna's Exhibit "I"].

3. Beihl, the insured owner of the car Maatki was driving had two policies that potentially afforded UM coverage, Aetna's primary automo-

bile liability policy and Fidelity's excess automobile liability policy, which are deemed "primary" by L.R.S. 22:1406(D)(1)(c)(i), as insurance on the vehicle. Maatki, as a non-owner occupant is entitled stack as "excess" one other coverage potentially available to him, such as State Farm's policy. Maatki alleged personal UM carrier. L.R.S. 22:1406(D)(1)(c)(i-ii); *Lee v. USAA Casualty Insurance Company*, 540 So.2d 1083, 1089 (La.App. 1st Cir.1989), *cert. denied*, 542 So.2d 514 (La.1989); and connected case, *Lee v. USAA Casualty Insurance Company*, 571 So.2d 127 (La.1990).

had long since paid the plaintiff, was released and subsequently dismissed from this suit in state court, on plaintiff's own motion.

Plaintiff also by second supplemental and amending petition added Fidelity Casualty Company of New York ("Fidelity") as excess UM carrier, by virtue of a policy no. XL103264 issued to Beihl, Maatki's employer. This Court granted Fidelity's motion for summary judgment, there being no opposition filed on behalf of plaintiff. Coverage under Fidelity's policy according to its terms and conditions would not be available to plaintiff, unless and until a judgment in damages exceeded $1,000,000.00. Plaintiff's demand is nowhere near that amount.

The only defendants remaining in this action at this stage of the proceedings are State Farm, Maatki's personal UM carrier and Aetna, who issued a primary automobile liability policy to Maatki's employer Beihl.

## FACTUAL BACKGROUND

The vehicle driven by Maatki was owned/provided by his employer Beihl. Aetna [Maatki's alleged primary UM carrier] issued a policy of automobile liability insurance to Beihl bearing policy no. 061FJ775301 CCA in full force and effect on the date and time of the accident.[4] A premium of $33.00 per vehicle was charged to Beihl in exchange for uninsured/underinsured motorist ("UM") limits of coverage in the amount of $100,000.00 per accident, that is less than the limits of liability coverage in the amount of $1,000,000.00 provided by Aetna's policy.[5]

It is uncontested that Aetna initially issued a commercial automobile liability policy to Beihl and J. Young and Company, Inc., bearing the policy no. 061FJ351447 CCA, effective for the time period of 4/30/86 through 11/11/86, which was taken over by Aetna mid-term from Continental Insurance Company.[6]

It is further undisputed that on May 28, 1986, approximately one month after Aetna's policy no. 061FJ351447 issued and in connection therewith, UM coverage under Aetna's Policy was rejected, by a legal representative of the policyholder, by execution of a rejection form provided by Aetna.[7] Beihl was charged a $33.00 per vehicle for lower UM limits of $100,000.00 in connection with this initial policy.[8]

Aetna then subsequently issued to Beihl a policy covering the following period, 11/11/86 through 11/11/87, bearing policy no. 061FJ617545 CCA.[9] Subsequent to that Aetna issued another policy to Beihl covering the following period, 11/11/87 through 11/11/88, bearing policy no. 061FJ775301 CCA. It was during the pendency of this second subsequent policy period that this accident occurred.

Sometime during December of 1988, Francis Sharp on Beihl's behalf executed yet another rejection form, selecting lower UM limits of $100,000.00. Since this second rejection/selection form was executed after the date of this accident and admittedly so, it can have no effect on UM coverage as of the date of the accident.[10]

---

4. See, Aetna's policy no. 061FJ775301 CCA, effective dates 11/11/87 through 11/11/88 attached as Exhibit "E" to Aetna's Motion for Summary Judgment.

5. *Id.*

6. See, Affidavit of William C. Moore, Beihl's insurance agent since 1964, at para. 3 [Aetna's Exhibit "A"]; and Affidavit of Lori Tozel, Aetna's claims representative since 1981, at para. 2 [Aetna's Exhibit "B"].

7. The Affidavit of Francis Sharp, Aetna's Exhibit "D", states that on May 28, 1986, he signed a UM selection form on behalf of Beihl rejecting UM coverage in connection with policy number 061FJ351447 CCA. The Affidavit of Beihl's Insurance Agent William C. Moore, Aetna's Exhibit "A", which confirms Sharp's rejection of UM coverage entirely on Beihl's behalf and indicates instead a premium was charged in the amount of $33.00 per vehicle for lower UM limits of $100,000.00. The Affidavit of Lori Tozel, Aetna's claims representative, Aetna's Exhibit "B" similarly corroborates the affidavit of Sharp.

8. *Id.*

9. *Id.*

10. *Randazzo v. Segura,* 514 So.2d 469, 472 (La. App. 3rd Cir.1987) (per curiam, on application for rehearing) [reversing summary judgment because the rejection document at issue was signed after the accident].

Consequently, it cannot supply the basis for Aetna's motion before this Court.

Neither the first renewal [Aetna policy no. 061FJ17545] nor the second renewal [Aetna policy no. 061FJ775301 CCA] of coverage indicate on the declaration sheet issuance as "new" policies as opposed to "renewal" or "substitute" policies.

## THE LAW

### I. UM COVERAGE UNDER AETNA'S POLICY

■ This being a diversity case, dealing with state insurance law, the court is bound by the *Erie* doctrine to apply it.

The most recent amended version of Louisiana's UM statute, L.R.S. 22:1406(D)(1)(a)(i) and (ii), came into effect September 1, 1987, and was in effect on April 20, 1988, the date of this accident at issue in this suit. The current version is similar to the September 9, 1977 version of the Louisiana's UM statute, except that insurers are required to use their own rejection/selection forms. The current version of the statute, reads in pertinent part:

(D)(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, and use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy ...; provided, however, **the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing or select lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or se-** lected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. (ii) **After September 1, 1987, such rejection or selection of lower limits shall be made on a form designed by each insurer.** The form shall be provided by the insurer to the named insured or his legal representative. The form ... shall be conclusively presumed to become a part of the policy ... irrespective of whether physically attached thereto. [emphasis supplied].

In the present case, the operative written rejection/selection form provided by Aetna, meets the requirements of valid rejection/selection under either version of Louisiana's UM statute. An effective rejection, under either version need not be attached to the policy.

Louisiana's Supreme Court in *Roger v. Estate of Tad Moulton*, 513 So.2d 1126, 1132 (La.1987), set forth the requirements for a valid rejection/selection as follows:

Accordingly, to effect a valid rejection of UM coverage under LSA–R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection.

The current version of the statute, as previously mentioned, simply interposes the additional requirement that the writing be a form supplied by the insurer.[11]

The current version of Louisiana's UM statute further provides in pertinent part that UM "coverage need not be provided in a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued

---

11. 1977 La. Acts 438, effective September 9, 1977 provided: "[a]ny document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto." The most recent amendment to the statute, Act 436 of 1987, provides: "After the effective date of this Act, such rejection or selection of lower limits shall be made only on a form designed by each insurer...."

to him by the same insurer or any of its affiliates." L.R.S. 22:1406(D)(1)(a)(ii).

The policies themselves do not support State Farm's assertion that the first "renewal" [i.e., Aetna's Policy No. 061FJ617545] is in reality an entirely "new" contract because it provided UM protection in the amount of $100,000 and the initial policy did not. The declarations sheet of the initial policy [i.e., Aetna's Policy No. 061FJ351447] reflects to the contrary, that is lower UM limits in the amount of $100,000, which is the same amount of UM coverage set forth in the declaration sheet of the first renewal [i.e., Aetna's Policy No. 061FJ617545]. The uncontroverted affidavits of William C. Moore, Lori Tozel, and Francis Sharp [Aetna's Exhibits "A", "B", and "C"] also indicate that Aetna's Policies Nos. 061FJ351447 CCA, 061FJ61745 CCA and 061FJ775301 CCA provided exactly the same amount of UM coverage, that is $100,000 per accident for the premium charged of $33.00 per vehicle.

*Tully v. Liberty Mutual Insurance Co.,* 516 So.2d 435, 439 (La.App. 1st Cir.1987), cited by State Farm, sheds no light on the issue before the Court. The subsequent policy at issue in *Tully* unquestionably added a new insured and that new insured's vehicle, neither of which were covered by the initial policy. The initial policy was in effect modified or changed, and consequently the subsequent policy could not be considered a renewal or substitute within the meaning of Louisiana's UM statute. *Id.*

The present case scenario involves no such changes or modifications, either as to named insureds or vehicles insured. The *Tully* case is inapposite. Neither *Roger,* supra, nor *International Insurance Co. v. Masur,* 404 So.2d 1313 (La.App. 2nd Cir 1981), *cert. denied,* 407 So.2d 733 (La.1981) dealt with the issue of whether a subsequent policy constituted a substitute or renewal policy under L.R.S. 22:1406(D)(1)(a). Rather, both cases turned on invalid written rejections which did not meet the formal requirements of Louisiana's UM statute.

The courts in *Schwoch v. Sutor,* 559 So.2d 552, 555 (La.App. 2nd Cir.1990) and *Smith v. USAA,* 560 So.2d 472, 474 (La. App. 1st Cir.1990), *cert. denied,* 564 So.2d 325 (La.1990), recognized that policy numbers can change upon "renewal" or "substitution." The mere fact that the policy numbers on the subsequent Aetna policies in the instant case are different from the initial policy number has no legal significance.

State Farm has failed to controvert any facts, which are material to the legal issue before this Court, that is whether the signed rejection of May 28, 1986, unquestionably executed in connection with Aetna Policy 061FJ351447 CCA operates as a valid rejection/selection of lower UM limits as to subsequent Aetna Policy No. 061FJ775301 CCA, which was in effect at the time of the accident at issue.

State Farm's bald allegation that policies issued subsequent to the initial policy period were in fact entirely "new" contracts and not renewals or substitute policies simply does not withstand scrutiny. Aetna has with competent evidence, that comports with Federal Rule of Civil Procedure, Rule 56, demonstrated that a named insured under Aetna's policy or his legal representative, rejected UM coverage equivalent to its limits of liability [i.e., $1,000,000.00] and selected lower UM limits in the amount of [$100,000.00]. That rejection and selection was unquestionably accomplished by execution of a written rejection form provided by Aetna and signed on May 28, 1986. That rejection effects a valid rejection/selection for subsequent renewal policies including Aetna's policies numbered 061FJ61745 CCA and 061FJ775301 CCA.

Aetna proved and State Farm concedes that the executed May 28, 1986 rejection form is valid and operative as to the initial policy. This rejection clearly applies to the subsequent renewal in effect at the time of this accident. State Farm has failed to show with any competent evidence that the subsequent policies were changed or different in any manner whatsoever, from the initial policy issued by Aetna to Beihl on April 20, 1986.

## II. AETNA'S PRIOR RELEASE/DISMISSAL

Louisiana law governs the interpretation of release/settlement agreement executed in Louisiana.[12]

Civil Code Article 3071 provides:

**A transaction** or **compromise** is an agreement between two or more persons, who for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger.

This contract must either be reduced to writing or recited in open court and capable of being transcribed from the record of the proceeding....

Louisiana law further provides that compromise transactions are to be construed as other contracts, that is according to the true intent of the parties, and this intent should be determined by the words of the contract, when they are clear and explicit. La. Civ.Code, arts. 2045 and 2046.[13]

The writing at issue in the case at bar, entitled "Receipt and Release" reads in pertinent part:

KNOW ALL MEN BY THESE PRESENT that the undersigned

### SLIMANE MAATKI

For the sole consideration of

ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) the receipt and sufficiency whereof is hereby acknowledged and which sum is being paid by or on behalf of:

BEIHL AND COMPANY AND AETNA CASUALTY & SURETY CO.

\*　　\*　　\*　　\*　　\*　　\*

none of whom admitting liability but all expressly denying liability, DOES HEREBY RELEASE, ACQUIT AND FOREVER DISCHARGE ALL OF SAID PARTIES, from any and all claims and demands, actions and causes of action, ... any and all claims for uninsured/underinsured motorist provisions of any policy, ... arbitrary and capricious conduct, ... and any other damage known or unknown to the undersigned, and resulting from an automobile accident which occurred on or about April 20, 1988.

\*　　\*　　\*　　\*　　\*　　\*

It is further stipulated and agreed to by the undersigned that this RELEASE expresses a full and complete COMPROMISE AND SETTLEMENT of any liability asserted and denied in the litigation entitled "Slimane Maatki vs. Naomi Moore ...", bearing docket number 89–4033, Division "I", regardless of the adequacy of the aforesaid payments made and the undersigned DIRECT AND AUTHORIZE THEIR COUNSEL TO DISMISS SAID SUIT SAID SUIT WITH PREJUDICE....

■ A release of claim in exchange for consideration is, in effect, a compromise transaction, and can constitute the basis for a plea of *res judicata*.[14]

■ Articles 3078 and 3079 of the Louisiana Civil Code clearly provide that *compromise transactions cannot be attacked on account of error in law*, but can be contested for errors in calculation, or in the person or the subject matter of the agreement, or for fraud or violence.

Plaintiff in the instant case has alleged no mathematical error, and no mistake as to the person, the accident, or which policy is in dispute. There are similarly no allegations of fraud or duress.

Plaintiff rather alleges mistake in the nature of **"error of law"**, that is the *legal effect* of the *May 28, 1986 rejection form.*

---

**12.** *Stipelcovich v. Sand Dollar Marine, Inc.,* 805 F.2d 599, 603 (5th Cir.1986).

**13.** See also, *Maltby v. Gauthier,* 526 So.2d 455 (La.App. 5th Cir.1988), *cert. denied,* 531 So.2d 474 (La.1988).

**14.** *Ewing v. Aubert,* 532 So.2d 882, 884 (La.App. 1st Cir.1988), *affirmed,* 558 So.2d 234 (La.1990);

and *Higgins v. State, Department of Health and Human Resources,* 451 So.2d 142, 144 (La.App. 1st Cir.), *affirmed on rehearing,* 458 So.2d 951 (La.App. 1st Cir.), *cert. denied,* 460 So.2d 607 (La.1984).

■ Parol evidence is inadmissable to vary the meaning and intent of the written compromise.[15] The four corners of the receipt and release agreement at issue admit only that it was a compromise and settlement of a disputed insurance claim.

■ The sole basis of State Farm's [16] request that this Court ignore the release/compromise is plaintiff's alleged mistaken belief regarding the legal effect of the May 28, 1986 rejection form. The record does not reflect that plaintiff has attempted to rescind either the release, or the order of dismissal, or that plaintiff has attempted to return Aetna's $100,000.

Regarding the consideration received by Maatki, one hundred thousand dollars is not a paltry sum. It certainly would not support a finding that plaintiff was uninformed of his rights or that he was not cognizant of the consequences of settlement. The release itself is signed by the attorney of plaintiff's choice, verifying that he explained to plaintiff the legal implications of the document [i.e., that the release operates as a full remission, renunciation, and compromise of all claims which Maatki may have against Aetna in connection with this accident].

Plaintiff or his counsel was certainly free to raise the issue of the validity of the May 28, 1986 rejection form prior to accepting consideration in exchange for release of all claims.

It would be difficult, at best, for this Court to recognize a claim of lack of understanding of plaintiff's rights and consequences of releasing, under the undisputed facts.[17]

Compromises are favored in Louisiana law and the burden of proving the invalidity of the compromise is on the party attacking it.[18] Louisiana courts have upheld the efficacy of a transaction as a compromise, even where there was no dispute as to amount owed.[19]

Louisiana courts require a clear showing that settlement violates good morals or the public interest before declaring it void.[20] Plaintiff in the present case has failed to make any showing regarding the invalidity of the release/compromise entered into with Aetna.

Accordingly, for all the aforesaid reasons, defendant Aetna Casualty & Surety Company's motion for summary judgment is hereby GRANTED.

15. La.Civ.Code, arts. 3078 and 3079. See also, *Maltby,* supra, at 457; and *Smith v. Leger,* 439 So.2d 1203 (La.App. 1st Cir.1983).

16. The plaintiff himself has not challenged the validity of the release/compromise agreement. State Farm, Maatki's personal UM carrier has taken aim at the document. State Farm who is not a party to either the compromise agreement or the insuring agreement between Aetna and the plaintiff does not have standing to attack the validity of the compromise.

17. See, *Stipelcovich,* supra, at 606. See also, *Boudreaux v. LeBlanc,* 517 So.2d 911, 913–14 (La.App. 3rd Cir.1987) [sustaining defendant's plea of *res judicata* finding parties mutually consented to compromise of claim against insurer was supported by evidence that cashed settlement check containing full release language, after having previously received payment for property damage repairs.].

18. *Travelers v. Anderson,* 533 So.2d 118, 120 (La.App. 4th Cir.1988), *cert. denied,* 535 So.2d 744 (La.1989) ["Courts are not created to relieve men of their bad bargains."].

19. *Oil Purchasers, Inc. v. Keuhling,* 334 So.2d 420, 423 (La.1975) [upholding agreement between an attorney and his heir which reduced the contingent fee of the attorney and which was submitted as the trial court's judgment on joint stipulation of the parties]; and *Stern v. Williams,* 365 So.2d 1128 (La.App. 4th Cir.1978) [upheld and enforced an agreement using the concepts of compromise, though at the time of entering the agreement there was no dispute as to monetary obligation].

20. *Adams v. Adams,* 529 So.2d 877, 879 (La.App. 4th Cir.1988), *cert. denied,* 533 So.2d 363 (La. 1988); and *Meinerz v. Treybig,* 245 So.2d 557 (La.App. 3rd Cir.1971), *cert. denied,* 258 La. 580, 247 So.2d 395 (La.1971).