L JONES, Judge.
Defendant/appellant, Prudential Property and Casualty Insurance Company (Prudential), appeal the judgment of the trial court finding that its umbrella policy for Julian G. Baudier primes the plaintiffs’ uninsured/underinsured motorist (UM) policy with State Farm Mutual Automobile Insurance Company (STATE FARM). After reviewing the record, we affirm the judgment of the trial court.

FACTS

This action arises out of an automobile accident that occurred on February 10, 1995 in Orleans Parish. The plaintiff, Niles A. Hellmers, was a guest passenger in the host vehicle, which was owned and operated by Julian G. Baudier. The second vehicle was owned and operated by the tortfeasor, Anatole Nicholas. As a result of this accident, plaintiff sustained severe injuries to his neck, back, shoulders, and head.
Plaintiff and his wife, Mary A. Hellmers, filed a Petition for Damages on February 2, 1996, against Nicholas, Baudier, - and their respective insurers, Allstate Insurance Company (Allstate), and Prudential Property and Casualty Insurance Company (Prudential). Plaintiffs alleged in their petition that all listed defendants were ha-ble for the injuries Mr. Hellmers sustained in the accident. Plaintiffs ^subsequently amended their petition, and added State Farm, their UM carrier, as a defendant.
At the time the accident occurred, there existed several insurance policies in effect which provided coverage for the accident sued upon. First, Allstate, Nicholas’ insurer, provided $10,000/$20,000 liability coverage, and Prudential, Baudier’s insurer, offered $100,000/$300,000 in UM coverage. Additionally, Baudier held an umbrella policy with Prudential insuring *782 “Personal Catastrophic Liability.” The umbrella policy provided $1,000,000 in liability coverage once the underlying automobile policies issued by Prudential were exhausted. Finally, the plaintiffs’ UM carrier provided $100,000/$300,000 coverage for any injuries the Hellmers would sustain while occupying a non-owned vehicle.
Plaintiffs subsequently dismissed their claim against Nicholas and her insurer once Allstate tendered $10,000 to the plaintiffs, which was the maximum amount of coverage for injuries to one person under the Nicholas policy. Prudential tendered $100,000 under its UM policy for Baudier, but refused to tender any funds under its umbrella policy. Prudential argued that it refused to tender any funds under its umbrella policy because its umbrella policy did not provide primary uninsured/underinsured motorist coverage under the circumstances. In other words, Prudential argues the plaintiffs’ UM policy with State Farm is primary.
On April 23, 1997, State Farm filed a Motion for Declaratory Judgment seeking to declare the Prudential umbrella policy with Baudier to be primary to the plaintiffs’ UM policy. The trial court granted State Farm’s motion on September 5, 1997. From this ruling, Prudential appeals.

\%The sole issue on appeal is which of the two policies (Prudential or State Farm) is primary.

Prudential argues that the plaintiffs’ State Farm UM policy should prime its umbrella policy because the “true nature” of an umbrella policy is that it is an “excess policy.” Because State Farm is a primary insurer and Prudential is a “true excess” insurer, Prudential argues that the policies at issue are non-concurrent. Thus, Prudential contends that in order for its umbrella policy to become effective, all other primary collectible UM policies (i.e., plaintiffs’ UM coverage) must first be exhausted. Prudential supports its contention with the Supreme Court’s decision in Lee v. USAA Casualty Insurance Company of America, 571 So.2d 127 (La.1990), along with La. R.S. 22:1406(D)(1).
State Farm, in rebuttal, argues Lee, 571 So.2d 127 is not controlling in the case sub judice because the facts in Lee, 571 So.2d 127 are distinct from the facts in this case. State Farm also argues that the language included in its UM policy with the Hellm-ers specifically states that the “uninsured motorist vehicle coverage on the vehicle in which the insured [Niles or Mary Hellm-ers] is an occupant will be primary." This language, State Farm argues, is echoed in La. R.S. 22:1406(D)(l)(a), thereby supporting the premise that the UM coverage for the vehicle in which the injured party was an occupant (i.e., Prudential’s umbrella policy) primes all other collectible insurance available to the claimants. Furthermore, State Farm contends that the holding in Capone v. King, 467 So.2d 574 (La. App. 5 Cir.1985), writ denied, 468 So.2d 1205 (La.1985) is directly on point to the issue presented in the instant matter, not the decision in Lee, 571 So.2d 127. We agree.
pin Lee, 571 So.2d 127, the insured’s daughter was involved in an automobile accident in one of the insured’s vehicles. She had liability insurance with USAA Casualty Insurance Company in the amount of $100,000, and the vehicle involved in the accident was insured with two UM policies. The insured’s second vehicle was also covered with the same UM policies.
The insured’s first UM policy was issued by Safeco with $250,000/$500,000 UM coverage limits. The second policy, which was issued by Continental Casualty Company (CNA), was a personal umbrella excess policy providing a per accident limit of $1,000,000 in UM coverage over both of the insured’s vehicles.
The trial court entered judgment in favor of the plaintiffs in the amount of $1,626,600, and required Safeco to tender the sum of $500,000 ($250,000 for each covered vehicle) plus legal interest. The appellate court reduced the award to *783 $1,506,600. USAA paid its policy limits for its insured in the amount of $100,000, thereby leaving a balance of $1,406,600. When the plaintiffs sought to collect $500,-000 from Safeco, and $906,600 from CNA, Safeco refused arguing that the umbrella policy with CNA was primary. On review, the court of appeal ranked the -UM policies as follows:
1. USAA, as liability insurer of the insured’s daughter, for its policy limits of $100,000.
2. Safeco, as “primary” UM insurer of the vehicle which the insured’s daughter was occupying at the time of the accident, for its UM policy limits of $250,000.
3. CNA, as statutory “primary” UM insurer of the vehicle in which the insured’s daughter was occupying at the time of the accident, for its aggregate limit of $1,000,000.
| s4. Safeco, as “excess” UM insurer of the other vehicle listed in the same policy, but not occupied at the time of the accident. Safeco was to pay $250,000 under its UM coverage thereby placing Safeco’s total liability at $500,000 for the accident.
See Lee, 571 So.2d at 128.
Following this judgment, the plaintiffs and CNA took separate writ applications to the Supreme Court.
The Supreme Court disagreed with Safeco’s argument that CNA’s umbrella policy primed its UM policy for the insured’s second vehicle. The Supreme Court opined that the language of Safeco’s UM policy made both of the Safeco policies primary after USAA paid the policy limit for its insured.
Furthermore, the Supreme Court found CNA to be a “true excess” policy because the language of the policy stated that CNA was to “provide extra liability insurance over and above what is covered by [the insured’s] basic policies.” (Emphasis added). Thus, the Supreme Court reversed the judgment of the court of appeal which ranked CNA’s policy above the second Safeco policy, affirmed the judgment of the trial court finding Safeco liable for $500,-000 plus legal interest, and ordered CNA to pay the remainder of $906,600.
The Supreme Court also reasoned that La.R.S. 22:1406(D)(l)(c) did not create a comprehensive ranking order, but instead it provided a framework within which two policies could be stacked. Though the language in a contract for insurance would classify the coverage as primary insurance, it may be referred to under the statute as “excess” insurance for the purpose of stacking. Therefore, the language in the statute does not alter in any way the contractual relationship between true primary and true excess insurers. With this reasoning, the Supreme Court concluded that the, UM policy limits for both of the insured’s vehicles must |fibe exhausted before CNA would be obligated to pay under its umbrella policy. See Lee, 571 So.2d at 129. Thus, the appellee, State Farm, was correct in arguing that Lee, 571 So.2d 127 does not support the appellant’s argument. From our analysis of the facts in Lee, 571 So.2d 127, we also find that Lee, 571 So.2d 127 is distinct from the case sub judice.
In the instant case, Baudier, the insured, had two UM policies covering the vehicle in which Hellmers was occupying, and both were issued by Prudential. In Lee, 571 So.2d 127, there was a total of three UM policies available to the plaintiffs’ claim, but from various insurance companies. In Lee, 571 So.2d 127, the three UM policies were sufficient to satisfy the plaintiffs’ damages, whereas, in this case, the Hellmers’ damages exceeded the liability coverage under the Nicholas vehicle, and it exceeded the liability and initial UM coverage under the Baudier vehicle. Also, in Lee, 571 So.2d 127, the host driver was not the owner of the vehicle. In this case, the host driver was the owner of the vehicle, and she did not possess any other UM coverage on any other vehicles.
However, there are some similarities. In Lee, 571 So.2d 127, Safeco issued UM *784 coverage on both vehicles. Likewise, Prudential issued two policies (primary and excess) which contained UM coverage for the Baudier vehicle. Moreover, like Safe-co, Prudential’s umbrella policy is primary as it relates to the plaintiffs UM coverage with State Farm.
Prudential’s argument that it’s “true excess” policy is not primary until the plaintiffs’ UM coverage is exhausted is without merit. In light of La.R.S. 22:1406 and the holding in Capone, 467 So.2d 574, we affirm the ruling of the trial court finding Prudential’s umbrella policy which contained UM coverage for the vehicle in question to be primary to any other collectible insurance. See Cabral v. National Fire Ins. Co., 563 So.2d 533 (La.App. 5 Cir.1990).
|7The applicable provisions of La. R.S.22:1406 provides:
If the insured has any limits of uninsured motorist coverage in a policy of an automobile liability insurance, in accordance with the terms of Subsection D(l), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
See La. R.S. 22:1406(D)(l)(c). (Emphasis added).
It is clear that the Hellmers’ pursuit of coverage under the Prudential umbrella policy for their damages is statutorily permissible.
The anti-stacking law seems at first blush to limit UM recovery to one policy for a person injured in his own car, and, under a limited exception, to two IsPolicies for one injured in a car he does not own. Yet the rule and the exception must be read in pari materia with the entire UM law. LSA-C.C. art. 17. The exception defines primary coverage as that coverage on the vehicle in which the person was injured. If, however, that vehicle has more than one UM policy on it, then for purposes of the statute, all such policies are primary. (Citations and footnote omitted). And, according to the statute “other uninsured motorist coverage available to [the insured]” is excess insurance. LSA-R.S. 22:1406 D(l)(c).
Pardue v. Dean, 515 So.2d 543, 544-545 (La.App. 1 Cir.1987). (Emphasis added).
Additionally, we find that the holding in Capone, 467 So.2d 574 does in fact support State Farm’s claim that the judgment of the trial court granting the motion for declaratory judgment was correct.
In Capone, 467 So.2d 574, the plaintiff, a guest passenger in the host vehicle, sustained injuries in an automobile accident caused by the fault of an uninsured motorist who struck the host vehicle. Because the tortfeasor was uninsured, the plaintiff filed suit against Allstate Insurance Com *785 pany (Allstate), the host driver’s UM insurer, and Aetna Insurance Company (Aetna), the host driver’s employer’s insurer because the host driver was en route to a work-related function. Allstate had UM coverage in the amount of $100,000, whereas Aetna provided UM coverage for the host driver’s vehicle in the amount of $500,000. Additionally, the host driver’s employer held $5 million dollars in UM coverage under an umbrella liability with Chicago Insurance Company (Chicago). Further, the plaintiff was also insured by a policy issued to her employer by Hartford Accident and Indemnity Company (Hartford).
The Fifth Circuit held that the three policies, (i.e., Allstate, Aetna, and Chicago) containing UM coverage for the host vehicle were primary under La, |9R.S. 22:1406 because they provided coverage for the vehicle the plaintiff was occupying at the time of the accident. The reviewing court further held that any attempt by these three insurers to seek contribution from Hartford would not be favored unless the plaintiffs damages exceeded the primary coverages on the vehicles involved in the subject accident. See La.R.S. 22:1406(D)(1)(c)(n); Capone, 467 So.2d at 580. Therefore, we find Capone, 467 So.2d 574 to be controlling in this matter as it relates to the ranking of UM coverages.

DECREE

For the reasons assigned, the judgment of the trial court finding Prudential’s umbrella policy to be primary is hereby affirmed.

AFFIRMED.